UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LISA SHERMAN, ET AL.  CIVIL ACTION

VERSUS  NO: 17-4061

LUKE IRWIN, ET AL.  SECTION: "J"(1)

## ORDER AND REASONS

## NATURE OF MOTION AND RELIEF REQUESTED

Before the Court is a *Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim* **(Rec. Doc. 12)** filed jointly by the former chief of the Slidell Police Department, Randy Smith, and the City of Slidell ("the City"). Also before the Court is Officer Luke Irwin's *Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim, or in the alternative, Motion for a More Definite Statement* **(Rec. Doc. 13).** Plaintiffs, Lisa Sherman and Randy Sherman, filed an opposition to the motions (Rec. Doc. 17), and former chief Smith and the City of Slidell, filed a reply (Rec. Doc. 23). Having considered the Motions and legal memoranda, the record, and the applicable law, the Court finds that the Motions should be **GRANTED IN PART** and **DENIED IN PART**.

Also before the Court is the current chief of Slidell Police Department, Randy Fandal's, *Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim.* **(Rec. Doc. 11.)** Plaintiffs named Chief Fandal as a defendant in his official capacity in their Complaint, but on August 29, 2017, the Court granted Plaintiffs' Unopposed Motion

1

to Dismiss Chief Fandal without Prejudice. (Rec. Doc. 24). Accordingly, Chief Fandal's *Motion to Dismiss* is **DENIED AS MOOT**.[1]

## FACTS AND PROCEDURAL BACKGROUND

This litigation involves an alleged nonconsensual sexual relationship between Plaintiff Lisa Sherman and Defendant Luke Irwin, a Slidell Police Officer ("Officer Irwin"). Ms. Sherman alleges that in the summer of 2015 through early May 2016, she was subjected to a series of continuous sexual assaults by Officer Irwin, which caused her extreme humiliation, embarrassment, and psychological injury. During that time, Officer Irwin allegedly created and maintained a nonconsensual sexual relationship with Ms. Sherman through coercion and intimidation as a Slidell Police Officer including threatening her relationship with her children and "her attempt to gain custody of a child." (Rec. Doc. 1 at ¶¶ VII, XI.)

On April 26, 2017, Ms. Sherman and her husband, Randy Sherman, filed suit in this Court naming the following Defendants: Officer Irwin, individually and in his official capacity as a Slidell Police Officer; Randy Smith, individually and in his official capacity as the former Chief of the Slidell Police Department ("former Chief Smith"); and the City of Slidell. In the complaint, Ms. Sherman asserts § 1983 claims as well as state law claims for sexual assault and intentional infliction of emotional

---

[1] Plaintiff named Chief Fandal in his *individual* capacity in the body of their complaint, but not in the caption, as is required by Fed. R. Civ. P. 10(a). A review of the docket reveals that Chief Fandal was therefore never formally made a party to this proceeding in his individual capacity. A failure to name a party in the caption is generally not considered fatal in itself, but the Court sees no reason to add Chief Fandal individually, only to summarily dismiss him—as this Court would do if it were to reach the merits of the Motion to Dismiss. *See Tyrolf v. Veterans Admin.*, 82 F.R.D. 372, 375 (E.D. La.1979). Therefore, the Court simply notes that as it stands now, Chief Fandal is not a party to this proceeding in *any* capacity.

2

distress. Mr. Sherman joins the action, claiming loss of consortium under Louisiana law.

Defendants subsequently filed their Motions (Rec. Docs. 12, 13) and Plaintiffs filed their opposition (Rec. Doc. 17), to which Chief Smith and the City filed a reply (Rec. Doc. 23). The Motions are now before the Court on the briefs and without oral argument.

## **LEGAL STANDARD**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal citations omitted). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-

pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

Rule 12(e) provides that a motion for more definite statement may be filed when "a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." The standard for evaluating a motion for more definite statement is whether the complaint "is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Advanced Commc'ns Techn's, Inc. v. Li*, No. 05 Civ. 4628, 2005 WL 3215222, at *3 (S.D.N.Y. Nov. 30, 2005) (citing *Bower v. Weisman*, 639 F.Supp. 532, 538 (S.D.N.Y.1986)).

When evaluating a motion for more definite statement, the Court must assess the complaint in light of the minimal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, which provides in pertinent part: "A pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing the pleader is entitled to relief . . ." Federal Rule of Civil Procedure 9(f), which should be read in conjunction with Rule 8, states that averments of time and place are material for the purpose of testing the sufficiency of a pleading; specific pleading of these averments, however, is not required.

4

## DISCUSSION

I. **PLAINTIFFS' § 1983 CLAIMS**

   a. **The Applicable Statute of Limitations**

Defendants move for dismissal of Ms. Sherman's § 1983 claims on the grounds that those claims are time-barred by the one-year limitations period provided by Louisiana Civil Code article 3492. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015) (citation omitted).

There is no federal statute of limitations for § 1983 actions; however, the "settled practice is to borrow an 'appropriate' statute of limitations" from the forum state. *King-White*, 803 F.3d at 758 (citation omitted). In *Wilson v. Garcia*, the Supreme Court held that a § 1983 claim is governed by the forum state's statute of limitations for personal injury actions. 471 U.S. 261, 265 (1985). Subsequently, in *Owens v. Okure*, the Court found that the general or residual limitations period should control for purposes of a § 1983 claim regardless of whether a particular state provides multiple statutes of limitations for a specific type of personal injury action. 488 U.S. 235, 249–50 (1989). Accordingly, this Court will apply Louisiana's one-year limitations period for personal injury actions[2] to Plaintiffs' § 1983 claims, rather than the three-year limitations period for sexual assaults.[3] *See King-White*, 803 F.3d at

---

[2] La. Civ. Code art. 3492.
[3] La. Civ. Code art. 3496.2

5

761 (applying Texas' general two-year limitations period for personal injuries rather than the longer period allowed by the state for sexual assault injuries).

"Absent tolling, the limitations period runs from the moment a plaintiff's claim 'accrues,' and while we borrow the limitations period from state law, 'the particular accrual date of a federal cause of action is a matter of federal law.'" *Id.* at 762 (citing *Frame v. City of Arlington,* 657 F.3d 215, 238 (5th Cir.2011)). "Under federal law, a cause of action accrues the moment the plaintiff knows or has reason to know of the injury." *Hunter v. Jefferson Par. Pub. Sch. Sys.*, 17-2015, 2017 WL 4619741, at *3 (E.D. La. Oct. 13, 2017) (citing *Smith v. Reg'l Transit Auth.,* 827 F.3d 412, 421 (5th Cir. 2016)); *see Rose v. Bartle,* 871 F.2d 331, 350 (3d Cir. 1989) (noting that a § 1983 claim for false arrest accrues on the date of the arrest). The Fifth Circuit has established that a plaintiff's knowledge encompasses two elements; accrual begins with plaintiff's awareness of: (1) the injury and (2) the defendant's causation of the injury. *King-White*, 803 F.3d at 762 (citation omitted). However, the plaintiff need not know that a legal cause of action exists; she need only know facts that would support a claim. *Id.*

Plaintiffs filed their complaint on April 26, 2017. Accordingly, Ms. Sherman cannot prevail on her § 1983 claims if they accrued before April 26, 2016. In the complaint, Ms. Sherman alleges that she was "subject to a continuing series of sexual assaults by Officer Irwin that continued from the summer of 2015 through early May 2016." (Rec. Doc. 1 at 3.) Defendants contend that the claims accrued when the alleged sexual assaults began in the summer of 2015, since that was when Ms.

6

Sherman was presumably aware (1) that she was injured and (2) that Defendants caused her injuries. Plaintiffs suggest that the sexual assaults may be considered conjunctively and as a continuing tort, but primarily argue in their opposition that each sexual assault is grounds for an individual claim which accrued on the date that it occurred. (Rec. Doc. 1 at 3). Plaintiffs devote a substantially larger portion of their brief arguing the latter position and so the Court will address it first.

**b. Each Sexual Assault as a Discrete Act**

Plaintiffs note that one of the alleged sexual assaults occurred in early May of 2016, which was less than one year before Plaintiffs filed this lawsuit. As such, Ms. Sherman contends that "[a]t a minimum, her claim of a sexual assault in May 2016" is not time-barred and survives Defendants' motions to dismiss. (Rec. Doc. 17 at 7). Defendants counter that because the Plaintiffs have characterized its allegations as an "entire series of sexual assaults, rather than just one isolated incident" (Rec. Doc. 23 at 3), accrual began in the summer of 2015, with the first assault.

Defendants' argument is something of an inverse of the continuing violations doctrine. Essentially, they aver that if any part of the "nonconsensual sexual relationship," occurred prior to the prescriptive period—before April, 26, 2016—then the Plaintiff is also time-barred from bringing claims for violative acts occurring after that date. They rely entirely on the Fifth Circuit's decision in *King-White*. In that case, a 16-year-old Texas high school student, A.W., alleged that her school teacher used his position at the school to establish a domineering and sexually abusive relationship and that he continuously sexually assaulted her for two years, from 2009

7

to 2011. *Id.* at 756. A.W. filed suit against the school in 2014, over two years past the last assault and two years past her 18th birthday—when tolling by virtue of her minority status ended. *Id.* at 762-63. Nevertheless, she argued that her claim was not barred by the applicable 2-year statute of limitations because the injury inflicted by the school was the school's failure to stop the abuse, rather than sexual assaults themselves. The Court found that, "even framing the injury as the failure to stop [the] abuse, rather than the abuse itself, Plaintiffs' allegations demonstrate that A.W. and [A.W.'s mother] were both sufficiently aware of the facts that would ultimately support their claims by the time A.W. turned 18 in the spring of 2011." *Id.* Therefore, she was time-barred from pursuing her § 1983 claims.

That case is obviously distinguishable from this one. Here, at least one act of abuse occurred within the statute of limitations, whereas in *King-White*, no act of abuse occurred within the applicable statute of limitations period. *See id.* Plaintiffs argue forcefully that to adopt Defendants' argument "would be to hold that a woman who is sexually assaulted on multiple occasions suffers no new injury after the first instance." (Rec. Doc. 17 at 6). The reasoning in *King-White* does not require that absurd result. Plaintiffs' alleged failure to timely file claims on previous violations of their civil rights does not immunize the city from timely claims for later acts that are themselves, standing alone, also violations of Plaintiffs' civil rights. *C.f. Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (finding that in a Title VII context, the statute of limitations runs from the occurrence of any discrete, identifiable act), *Barbaro v. U.S. ex rel. Fed. Bureau of Prisons FCI Otisville*, 521

F.Supp. 2d 276, 282 (S.D.N.Y.2007) (finding that in a *Bivens* action, "a freestanding violation may always be charged within its own charging period regardless of its connection to other violations.") (citation omitted). Further, it makes no difference if the injury inflicted here is construed as a failure to supervise or intervene to prevent the assault on the Plaintiff's, as the court did so in *King-White* (clearly accepting the injury most beneficial to plaintiffs, arguendo). In fact, doing so could only help the Plaintiffs prescription-wise: Defendants' failure to act the sexual assault perpetrated in May of 2016 would, at the earliest, prescribe in May of 2017. Therefore, Defendants' Motions to Dismiss are denied to the extent that either Motion applies to any conduct occurring after April 26, 2017.

### c. Application of the Continuing Violations Doctrine

Plaintiffs also suggest (without fully briefing) that even for those alleged assaults occurring prior to April 26, 2016, there is no time bar, because Louisiana recognizes "continuing torts in the context of sexual harassment." (Rec. Doc. 17 at 7) (citing *Bustamento v. Tucker*, 607 So.2d 532, 538 (La. 1992). Again though, accrual for a § 1983 claim is determined through the application of federal and not state law, *King-White*, 803 F.3d at 762, and whether the continuing violations doctrine is applicable in this case is questionable given federal precedents. The Fifth Circuit generally, though not always,[4] characterizes the doctrine as a tolling principle rooted in equity. *Texas v. United States*, 891 F.3d 553, 562 (5th Cir. 2018). Both the Fifth

---

[4] "Continuing violation theory" also applies to a breed of statutory interpretation, by which a court examines the statutory text to determine whether it contemplates a continuing duty to refrain from acting. *Texas v. United States*, 891 F.3d 553, 563 (5th Cir. 2018). It is not applicable in this case.

9

Circuit and the U.S. Supreme Court have been hesitant to apply the theory, except as to those claims that are only identifiable where conduct is examined over an extended period of time—workplace harassment is the classic case. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115 (2002); *see, e.g., Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 740 (5th Cir. 2017), *as revised* (Mar. 13, 2017).

In *National R.R. Passenger Corp. v. Morgan*, the Supreme Court considered a Title VII claim for workplace harassment. 536 U.S. at 106. The plaintiff in that case alleged a host of discriminatory and retaliatory acts were committed against him, some occurring within the limitations period and some outside it. *Id.* The Court found that for discrete and easy to identify acts (such as a termination) the time bar applied if the acts were committed outside the limitations period. Hostile work environment claims on the other hand are based on the "cumulative effect of individual acts." *Id.* at 115. Therefore, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117. "The line *Morgan* drew between discrete act claims and ongoing harassment claims means the latter, but not the former, may qualify as continuing violations whether brought under Title VII or section 1983." *Heath*, 850 F.3d at 740.

There may be non-workplace harassment claims that depend on the "cumulative effect of individual acts," rather than discrete and identifiable acts (such as sexual assault), but such a claim is not discernable from the Plaintiffs' complaint.

10

Rather, it appears that Plaintiffs' allegations are that the City and the former chief repeatedly failed to act in response to a series of assaults by Officer Irwin, each of which was substantial enough to be actionable on its own. The facts as they are currently alleged are not sufficient to render the continuing violations doctrine applicable. Therefore, the Court dismisses without prejudice Plaintiff's § 1983 claims to the extent they regard Defendants' conduct committed (or not committed) before April 26, 2016. Plaintiffs may amend their complaint before 21 days from this order, but should remember that "[d]iscrete actions, even if serial, are not entitled to the shelter of the continuing violations doctrine." *Doe v. United States*, 853 F.3d 792, 802 (5th Cir. 2017), *as revised* (Apr. 12, 2017).

### d. Duplicative § 1983 Actions against Former Chief Smith in his Official Capacity

Former Chief Smith argues that claims against him in his official capacity are duplicative of those identical claims asserted against the City and should therefore be dismissed. "Because official capacity suits are really suits against the governmental entity, [Plaintiffs'] attempt to hold [the chief] liable for failing to train and supervise" the officer is "subsumed within [their] identical claim against [the City]." *See Goodman v. Harris Cty.*, 571 F.3d 388, 395–96 (5th Cir. 2009). Plaintiffs' claims might well be duplicative, but the Court sees no reason to make that determination at this early stage. The Court defers the decision of whether to dismiss the claims against Chief Smith in his official capacity as duplicative until a later date.

However, the Court notes that it will judge claims asserted against Chief Smith in his official capacity under the same standard as claims asserted against the City.

### e. § 1983 Claims Depending on Vicarious Liability

Former Chief Smith also argues that he cannot be held vicariously liable under § 1983 by virtue of the fact that he served in a supervisory capacity to Officer Irwin. Chief Smith is correct; "[u]nder section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). To the extent that Plaintiffs alleged a claim based on vicariously liability against former Chief Smith in his individual capacity, it is dismissed with prejudice.

Similarly, vicarious liability does not apply in a § 1983 claim against a municipality. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). Any § 1983 claim depending on vicarious liability and asserted against the City is also dismissed with prejudice.

### f. Plaintiff's § 1983 *Monell* Claims for against the City and former Chief Smith in his Official Capacity

While neither state officials nor municipalities are vicariously liable for the deprivation of constitutional rights by employees, each can be held liable for their own acts or failures to act which themselves cause constitutional violations. *See Monell,* 436 U.S. at 694. Therefore, a common claim alleged against municipalities and state officials is that a failure to train or supervise an employee was the ultimate cause of a plaintiff's injury. *See, e.g.*, *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th

Cir.2009). Plaintiff alleges that former Chief Smith and the City are liable under *Monell* because of former Chief Smith's failure to train Officer Irwin. Former Chief Smith and the City however, argue that the claims against them for failure to train must be dismissed, because "Plaintiff[s'] complaint is void of any allegations that would satisfy the exacting standard of 'deliberate indifference'" that Plaintiffs must meet to succeed on the claim. (Rec Doc. 23 at 5).

In a § 1983 claim for failure to supervise or train, the plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris Cty.*, 571 F.3d 388, 395–96 (5th Cir. 2009) (citation omitted). Deliberate indifference is often the hardest element to establish; if a plaintiff cannot meet its standard then a court need not examine the other two elements. *Estate of Davis ex rel. McCully v. City of N. Richland Hills,* 406 F.3d 375, 382 (5th Cir.2005).

To establish deliberate indifference, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Cousin v. Small,* 325 F.3d 627, 637 (5th Cir. 2003) (internal quotation omitted). Without establishing a pattern, a plaintiff may survive a motion to dismiss, only "in a limited set of cases" that are egregious, because "the risk of constitutional violations was or should have been an obvious or highly predictable consequence of the training inadequacy." *Littell v. Houston Indep.*

*Sch. Dist.*, No. 16-20717, 2018 WL 3149148, at *5 (5th Cir. June 27, 2018). (internal marks and citations omitted). A broad assertion that a training program is ineffective will not be sufficient; rather, "a plaintiff must allege with specificity how a particular training program is defective." *Goodman*, 571 F.3d at 395–96. The focus of the inquiry is on how the training program inadequately prepared an officer for the tasks he must perform. *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005). Essentially, what the Plaintiff must ultimately prove is that she was injured by Officer Irwin because former Chief Smith or the City had a policy *not* to adequately train its employees. *City of Canton*, 489 U.S. at 390 (framing the central question as "whether such inadequate training can justifiably be said to represent 'city policy.'").

Plaintiffs' failure to train allegation is as general as they come: that at Slidell Police Department, there is "grossly inadequate training to perform duties" as evidenced by Officer Irwin's behavior. But, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* at 390–91. Plaintiff alleges she was subjected to a series of sexual assaults and does not connect the assaults to any duty that Officer Irwin was assigned to perform. That kind of deliberate, illegal, and deplorable behavior is almost assuredly the result of the officer's severe personal shortcomings and not the result of a failure to train. In any case, this failure to train claim is without sufficient particularity.

Plaintiffs do allege "Chief Smith fail[ed] to perform proper background checks on applicants for the SPD" and failed to terminate Officer Irwin. However, a failure to conduct proper background checks is not the same as a *policy* of not conducting proper checks. *See id.* at 391. Plaintiffs' complaint does not adequately establish a pattern of violations sufficient to meet the deliberate indifference standard. Moreover, the pleadings do not give sufficient facts to establish that Chief Smith or the City had a policy of not terminating officers for sexual assault. To be sure, Plaintiffs assert that there was a series of sexual assaults perpetrated by Officer Irwin, but no facts are alleged from which the Court can infer that Chief Smith or the City knew of these assaults and deliberately chose to do nothing. Therefore, the § 1983 failure to train and supervise claims against Chief Smith and the City are dismissed without prejudice. Ms. Sherman has failed to allege with specificity any policy resulting in the deprivation of her constitutional rights.[5]

### g. Plaintiffs' § 1983 Claims against Chief Smith in his Individual Capacity

For Plaintiffs' identical claims alleged against Chief Smith in his individual capacity, the same standard applies—Plaintiffs must show that Chief Smith was deliberately indifferent to the need to train Officer Irwin, and the lack of training actually cased the constitutional harm or deprivation of rights. *Flores v. Cty. of Los*

---

[5] Furthermore, Plaintiffs concede that punitive damages are not available against a municipality for § 1983 claims pursuant to *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). *See* (Rec. Doc. 17 at 12). As such, Plaintiffs' demand for punitive damages against the City is dismissed with prejudice.

15

*Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (citation omitted). As such, Plaintiffs' § 1983 claims are dismissed without prejudice for the reasons given above.

### h. Plaintiffs' § 1983 Claims against Officer Irwin

Officer Irwin motions for dismissal on the sole ground that Plaintiffs' claims are barred by the applicable statute of limitations, but as noted above, the claims stemming from conduct after April 26, 2016 are not time-barred. However, Officer Irwin also asks for a more definite statement pursuant to Rule 12(e). He requests that the Court require Plaintiff to provide more details regarding the specific actions, the number of actions, and the specific dates for when the injuries occurred as well as details on whether or not Officer Irwin was acting in his official capacity when these incidents occurred. (Rec. Doc. 13-1 at 6). Officer Irwin further contends that until Plaintiff provides more details, he is unable to determine whether any affirmative defenses, like qualified immunity, are available to him. *Id.* at 7.

Defendant's complaints as to vagueness are well taken. Plaintiff has alleged Officer Irwin created and maintained a non-consensual sexual relationship through coercion and intimidation with his position as a police officer. Plaintiff also alleges that during this time she suffered a continuing series of sexual assaults by Officer Irwin. However, Plaintiff has not alleged which of her constitutional rights have been violated.

Plaintiffs must amend their complaint within 21 days to allege with sufficient specificity the actions of Officer Irwin and the constitutional rights that such actions

16

violated. As such, Officer Irwin's Motion for a More Definite Statement requesting specifics in order to properly respond to Plaintiffs' allegations is granted.

## II. PLAINTIFFS' STATE LAW CLAIMS

Chief Smith and the City also argue that Plaintiffs' state law tort claims for intentional infliction of emotional distress and loss of consortium are prescribed (each also bearing a 1-year prescription period). (Rec. Doc. 12-1 at 8). Plaintiffs counter that Ms. Sherman's claims for intentional infliction of emotional distress are governed by *Bustamento v. Tucker* and are not prescribed because they result from a continuing tort. As a result, Mr. Sherman's claim for loss of consortium, being a derivative claim of Ms. Sherman's state claims, is not barred either.[6] As the Court found above when considering Plaintiff's § 1983 claims, there are two problems with Plaintiffs' argument. First, it is unclear to what extent Louisiana's variation continuing violations doctrine extends to conduct other than workplace harassment. Second, even if it does apply outside that context, Plaintiff has not alleged sufficient facts for the Court to determine if the doctrine should be applied in this case.

It is true that "Louisiana recognizes continuing torts in the context of sexual harassment." (Rec. Doc. 17 at 7) (citing *Bustamento*, 607 So.2d at 543). But, the critical point for the Louisiana Supreme Court in *Bustamento* was not that the plaintiff's claimed abuse was sexual in nature, it was that plaintiff claimed

---

[6] Defendants have not challenged the timeliness of Ms. Sherman's state claims for sexual assault, which is governed by a three-year prescriptive period pursuant to Louisiana Civil Code Article 3496.2. This case exemplifies the incongruent limitations periods that can arise under the rule that federal courts must adopt the more general personal injury statute for § 1983 claims even if the forum state has a more specific limitations period for the type of action at issue in a given case.

17

continuous harassment in the workplace. *See generally Id.* In holding that the plaintiff was not time barred in bringing her intentional infliction of emotional distress the Court distinguished another case dealing with sexual assault, *Laughlin v. Breaux*, 515 So.2d 480, 482 (La. App. 1 Cir. 1987). *Id.* at 540. In *Laughlin*, the plaintiff alleged her boyfriend beat, raped, or verbally abused her on a series of dates, some falling in the prescription period and some outside it. *Id.* at 481-82. The Louisiana First Circuit found no merit to the claim that the "defendant's actions constituted a continuing tort." *Id.* at 482. Rather it found that each incident was separate and gave rise to its own cause of action, and thus each commenced its own prescription period at its occurrence. In analyzing *Laughlin*, the Louisiana Supreme Court made the same distinction as the federal Fifth Circuit: claims for distinct acts begin accrual immediately, but accrual is tolled for claims that only become actionable when behavior is cumulated over period of time. *Bustamento,* 607 So.2d at 542.

Here, it is unclear to the Court what the exact bases of Plaintiff's emotional distress claim are, but, at least some conduct that could give rise to an intentional infliction of emotional distress claim occurred within the prescription period (notably the sexual assault occurring in May of 2016). Although there are not sufficient facts alleged to support a continuing violations theory, there is at the very least a non-prescribed basis for Plaintiff's intentional infliction of emotional distress claim. Therefore, the Motions to Dismiss Plaintiffs' state law claims is denied to the extent it applies to conduct occurring after April 26, 2016.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that former Chief Smith and the City's *12(b)(6) Motion to Dismiss for Failure to State a Claim* **(Rec. Doc. 12)** is hereby **GRANTED IN PART** to **dismiss without prejudice** Plaintiff's § 1983 claim alleging conduct occurring before April 26, 2016; **DENIED IN PART** so far as it asks this Court to dismiss § 1983 claims as being duplicative; **GRANTED IN PART** to **dismiss with prejudice** Plaintiff's § 1983 claims based on vicarious liability; **GRANTED IN PART** to **dismiss without prejudice** Plaintiff's § 1983 claims of *Monell* liability against former Chief Smith, individually and in his official capacity, and the City for failure to train or supervise Officer Irwin; **GRANTED IN PART** to **dismiss with prejudice** Plaintiffs' demand for punitive damages against the City, and **GRANTED IN PART** to **dismiss without prejudice** Plaintiffs' state law claims alleging conduct occurring before April 26, 2016.

**IT IS FURTHER HEREBY ORDERED** that Officer Irwin's *Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim, or in the alternative, Motion for a More Definite Statement* **(Rec. Doc. 13)** is hereby **GRANTED IN PART** to **dismiss without prejudice** Plaintiff's § 1983 claim alleging conduct occurring before April 26, 2016; and **GRANTED IN PART** to require plaintiff to **issue a more definite statement** as to their claims against Officer Irwin.

**IT IS FURTHER ORDERED** that Chief Fandal's *Motion to Dismiss* **(Rec. Doc. 11)** is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiffs are granted twenty one days from the issuance of this Order to amend their complaint.

New Orleans, Louisiana, this 31st day of July, 2018.

_____
Carl J. Barbier
United States District Judge