UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LISA SHERMAN, ET AL. | CIVIL ACTION |
| VERSUS | NO: 17-4061 |
| LUKE IRWIN, ET AL. | SECTION: "J"(2) |

## ORDER AND REASONS

Before the Court is a *Partial Rule 12(b)(6) Motion to Dismiss* **(Rec. Doc. 32)** filed jointly by the former chief of the Slidell Police Department, Randy Smith, and the City of Slidell (collectively, the "Defendants"). This Court ruled on the Defendants' prior motion to dismiss (Rec. Doc. 12) in July of 2018. (Rec. Doc. 27). After Plaintiffs filed an amended complaint (Rec. Doc. 31), former Chief Smith and the City filed the instant Motion. Ms. Sherman filed an opposition (Rec. Doc. 35), to which the Defendants replied (Rec. Doc. 39). Having considered the Motion and legal memoranda, the record, and the applicable law, the Court finds that the Motion should be **GRANTED IN PART** and **DENIED IN PART**.

## FACTS AND PROCEDURAL BACKGROUND

In addition to dismissing most of the Plaintiffs' claims without prejudice, this Court's July order and reasons also granted the motion for a more definite statement filed by another defendant in the case, Officer Luke Irwin of the Slidell Police Department.[1] In accordance with the Court's order, Plaintiffs filed a supplemental

---
[1] Officer Irwin has filed a separate motion to dismiss (Rec. Doc. 44), but that motion is not yet submitted before the Court and the Court takes no consideration of it in issuing this Order.

1

and amending complaint.[2] Whereas the Plaintiffs' original complaint sketched out only the most basic picture of the abusive relationship Ms. Sherman alleges Officer Irwin maintained with her, the supplemental complaint adds several pages describing Officer Irwin's sexual assaults in great detail. Ms. Sherman alleges that, beginning in February of 2015, Officer Irwin used various threats—both express and implied—to coerce her into having sex with him on multiple occasions. On other occasions Officer Irwin allegedly relied on physical force.

For example, Plaintiff alleges that in February of 2015, after she told Officer Irwin that she did not want to carry on a sexual relationship with him, he replied that she "had no choice in the matter."[3] He later threatened that it would be easy to place cocaine in someone's gas tank and have them pulled over and that people can be made to disappear.[4] Ms. Sherman alleges that in April of 2015, Officer Irwin threatened to use his power as an officer of the Slidell Police Department to have Ms. Sherman and another woman arrested if they did not engage in sexual acts with him.[5] Ms. Sherman claims that Officer Irwin arrived at her home and arranged for another victim, R.W., to come to her house. Officer Irwin had her undress and he "ultimately penetrated Ms. Sherman and had R.W. fondle [Ms. Sherman]."[6] He then reminded the women that he had the power to send them to jail with a single phone call.[7]

---

[2] After the amended complaint was filed, Plaintiffs' counsel motioned to withdraw as Randy Sherman's attorney. (Rec. Doc. 36). The Court granted the motion and ordered Randy Sherman to give the Court notice of whether he intended to proceed pro se or with new counsel. (Rec. Doc. 40). Randy Sherman failed to give any notice, so the Court considers Randy Sherman to be proceeding pro se.
[3] (Rec. Doc. 31 at 2).
[4] (Rec. Doc. 31 at 2).
[5] (Rec. Doc. 31 3-4).
[6] (Rec. Doc. 31 at 4).
[7] (Rec. Doc. 31 at 4).

Ms. Sherman also gives some specificity to her allegation that "Chief Smith . . . knew or should have known of Officer Irwin's coercion and intimidation of Ms. Sherman under color of state law."[8] Ms. Sherman claims that she met with Chief Smith in April of 2015 at a Starbucks to talk to him about Officer Irwin. She says that Chief Smith brushed off her concerns as being a private matter that did not involve him.[9]

Ms. Sherman avers Officer Irwin's sexual assaults continued after this conversation with former Chief Smith. On May 5, 2015, Officer Irwin allegedly forced Ms. Sherman to perform oral sex on him as "punishment" for not going along with an attempt to cover-up his conduct.[10] He did so while in uniform and in his department vehicle. Ms. Sherman also alleges that Officer Irwin raped her inside of his department vehicle in June of 2015. On that occasion, Officer Irwin allegedly coerced Ms. Sherman into his car by threatening her probation and her custody of her children.[11] Ms. Sherman alleges that upon reaching a dark parking lot, Officer Irwin drew his service weapon and placed it close to her head. When she protested she did not want to have sex with him, Officer Irwin forced her to do so by making her afraid for her life.[12]

Ms. Sherman claims that in December of 2015, she spoke with former Chief Smith and questioned whether he had told Officer Irwin to leave her alone.[13] Former

---

[8] (Rec. Doc. 1 at 3).
[9] (Rec. Doc. 31 at 3).
[10] (Rec. Doc. 31 at 5).
[11] (Rec. Doc. 31 at 5).
[12] (Rec. Doc. 31 at 6).
[13] (Rec. Doc. 31 at 6-7).

3

Chief Smith allegedly replied that the matter did not involve him and told Ms. Sherman to leave him alone. Ms. Sherman avers that Chief Smith approached her in January of 2016 at a parade to ask if the situation between her and Officer Irwin was ongoing.[14] Ms. Sherman alleges that she told Chief Smith she would be filing a formal complaint with the department and that Chief Smith responded aggressively that he would not consider the matter, noting it might interfere with the St. Tammany Parish Sheriff election. Again, Ms. Sherman is not explicit in what she alleges she told Chief Smith, but elsewhere in the complaint she does claim that Chief Smith had "actual knowledge of Officer Irwin's actions."[15]

Ms. Sherman alleges that the last sexual assault occurred on May 5, 2016.[16] On that date, Officer Irwin allegedly called Ms. Sherman and told her that he had informed his wife and his superiors about their relationship.[17] Officer Irwin said that Ms. Sherman needed to take a ride with him so that he could tell her what to say if she was approached by his superior. Ms. Sherman said she did not want to go—she had no one to watch her children—but she relented when "Officer Irwin's voice changed and he said Lisa this is my career get in the truck."[18]

Ms. Sherman agreed to go for a ride with Officer Irwin. She put her youngest child to bed and then walked outside to get in Officer Irwin's SUV. She alleges that Officer Irwin then drove them through her neighborhood and down a service road.[19]

---

[14] (Rec. Doc. 31 at 7).
[15] (Rec. Doc. 31 at 10).
[16] (Rec. Doc. 31 at 8).
[17] (Rec. Doc. 31 at 8).
[18] (Rec. Doc. 31 at 8).
[19] (Rec. Doc. 31 at 9).

4

Officer Irwin told Ms. Sherman that if anyone approached her she should not mention anything. Ms. Sherman agreed. Ms. Sherman claims that "Officer Irwin said that she had betrayed him once and not to let it happen again."[20] Ms. Sherman alleges that Officer Irwin then drove to a secluded area and sexually assaulted her yet again:

> Officer Irwin drove all the way to the back of a road where he said he needed stress relief. He wanted Ms. Sherman to perform oral sex on him. Ms. Sherman told him no[,] but Officer Irwin grabbed her, pulled her closer to him and said hurry up I have no time for your (expletive deleted). Oral sex was performed[,] and Officer Irwin had his hand in Ms. Sherman's shorts which he then moved up to her breasts rubbing them[.] Officer Irwin had on his SPD shield with his necklace attached to it. His gun was on the center of [the] floor board of the black SUV.[21]

In sum, Ms. Sherman claims that Officer Irwin used his position as an officer of the Slidell Police Department to keep Ms. Sherman in a non-consensual sexual relationship with him. "Chief Smith could have ended Officer Irwin's predation but declined to do so or to properly investigate the situation."[22]

## **LEGAL STANDARD**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal citations omitted). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

---

[20] (Rec. Doc. 31 at 9).
[21] (Rec. Doc. 31 at 9).
[22] (Rec. Doc. 31 at 10).

5

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

## DISCUSSION

### I. PLAINTIFF'S OFFICIAL CAPACITY SUIT AGAINST CHIEF SMITH IS DUPLICATIVE

The Court understands Plaintiffs' complaint to assert claims against Chief Smith in his official and individual capacities. "Because official capacity suits are really suits against the governmental entity, [Plaintiff's] attempt to hold [former Chief Smith] liable for failing to train and supervise, if in his official capacity, is subsumed within her identical claim against [the City]." *Goodman v. Harris Cty.*, 571

F.3d 388, 396 (5th Cir. 2009); *see also Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). Therefore, Plaintiff's official capacity suit against Chief Smith shall be dismissed as duplicative.

## II. PRESCRIPTION OF PLAINTIFF'S § 1983 CLAIMS

Ms. Sherman brings claims against former Chief Smith and the City pursuant to § 1983 for their failure to adequately train and supervise Officer Irwin. The Court granted the Defendants' prior motion to dismiss in part on the ground that the majority of the alleged conduct occurred prior outside of the applicable limitations period.[23] Defendants renew their request for dismissal on Plaintiff's claims for conduct occurring before April 26, 2016. The Court grants this request for the reasons stated in the Court's previous order.[24] Applying Louisiana's 1-year general limitations period,[25] Defendants cannot be held liable under § 1983 for conduct occurring before April 26, 2016. *See King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 761 (5th Cir. 2015) (finding a state's general personal injury limitations period is borrowed, rather than the specific limitations period for sexual assault). Notably however, one sexual assault—the one occurring on May 5, 2016—supports a §1983 claim that is not time-barred.

Nevertheless, Defendants now argue that because Plaintiff's alleged confrontations with former Chief Smith occurred before April 26, 2016, the alleged

---

[23] (Rec. Doc. 27 at 6-11).
[24] Although Plaintiffs raised the continuing violations doctrine in their previous pleadings, that argument has now been abandoned.
[25] La. Civ. Code art. 3492.

7

acts of failing to train or supervise also occurred outside the limitations period.[26] This argument fails for the reasons discussed in the Court's previous order. First, every sexual assault Ms. Sherman suffered was a discrete, identifiable injury, giving rise to its own cause of action. *See Nat' R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). That is why the Court rejected Plaintiff's suggestion that she enjoys the benefit of tolling by function of the continuing violations doctrine.[27] Second, "the limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *King-White*, 803 F.3d at 762 (quoting *Spotts v. United States*, 613 F.3d 559, 574 (5th Cir. 2010)). Ms. Sherman was injured when she was sexually assaulted on May 5, 2016. Although she could have sued the City or Chief Smith pursuant to § 1983 for her other injuries before that date, she could not sue for that last sexual assault until she was subjected to it. *Id.* Ms. Sherman had a year after this final injury to file suit pursuant to § 1983, no matter the defendant, or whether she alleged it was action or inaction that caused her injury. *Id.* Thus, Ms. Sherman has a § 1983 claim against the Defendants that is not time-barred.

### III. Ms. Sherman's § 1983 Claims against Chief Smith Individually

Although the Court dismissed Ms. Sherman's claims against Chief Smith in his official capacity, the Court must still consider Plaintiff's individual §1983 claim against him. To succeed on a failure to supervise or train claim, a plaintiff must be able to demonstrate: "(1) the supervisor either failed to supervise or train the

---

[26] (Rec. Doc. 39 at 3).
[27] (Rec. Doc. 27 at 9-11).

8

subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman*, 571 F.3d at 395-96 (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998)). "Deliberate indifference," defined by the Supreme Court as a "conscious disregard for the consequences of their action," can be demonstrated by showing a supervisor's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees." *Rivera v. Bonner*, 691 F. App'x 234, 240 (5th Cir. 2017) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 407 (1997)).

To succeed on this third and most difficult prong, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training" or supervision is "obvious and obviously likely to result in a constitutional violation." *Id.* (quoting *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)). However, Ms. Sherman invokes the single-incident exception adopted by the Fifth Circuit in *Brown v. Bryan County*, 219 F.3d 450 (5th Cir. 2000). Under that exception, a plaintiff "may establish deliberate indifference by showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights, such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (citation omitted).

Ms. Sherman alleges in her well-pleaded complaint that former Chief Smith had actual knowledge—from her multiple and direct confrontations with the Chief—that Officer Irwin was using his authority as a police officer, as well as the physical implements of his office, to sexually dominate a citizen of his jurisdiction. Ms. Sherman alleges that Chief Smith's response to learning of this conduct on the part of his employee was to shrug off Plaintiff's victimization as a personal problem. Assuming Plaintiff's allegations are true, is difficult to imagine what constitutes "deliberate indifference" if this does not. There's no need to resort to the single-incident exception in this case—although the Court believes that reference to even one of the sexual assaults described in this case would be sufficient to satisfy the exception. *C.f. Bryan Cty.*, 219 F.3d at 458, 462 (finding county liable under single-incident exception for failing to provide any training or supervision to an inexperienced deputy).

Where a plaintiff alleges that her harm resulted from a supervisor's failure to train, supervise, or discipline a specific employee, a plaintiff can succeed by showing that the supervisor was on notice because of a pattern of similar violations by that employee. *See Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (finding that the pattern must consist not merely of "bad acts" but of "*similar incidents in which . . . citizens were injured*"). Here, Ms. Sherman alleges that she was sexually assaulted multiple times by Officer Irwin before she was sexually assaulted again on May 5, 2016. Not only did Officer Irwin allegedly commit the same crime each time, the assaults appear to have unfolded in a very

similar fashion.[28] For this reason it appears that the sexual assault occurring within the applicable limitations period was the "highly predictable consequence" of former Chief Smith's failure to take *any* disciplinary action against Officer Irwin after learning of his prior acts of sexual misconduct against Ms. Sherman. *Id.* at 386.

Defendants opine that Ms. Sherman fails to point to any unconstitutional policy that former Chief Smith applied in this case. First, the Court infers Plaintiffs' complaint to allege that it was Chief Smith's unconstitutional "policy" to not supervise Officer Irwin at all. Although the issue will necessarily be more developed at summary judgment and at trial, the Court accepts the premise at this stage that police supervisors must provide minimal supervision of their officers, who are armed and have powers to manifest bodily control over citizens. *See Bryan Cty.*, 219 F.3d at 462 n. 13.

Second, Ms. Sherman explicitly alleges that Defendants "had an inadequate policy for dealing with abuse/misuses of SPD authority."[29] This allegation bears a close resemblance to what was alleged in *Drake v. City of Haltom City*, 106 F. App'x 897, 899 (5th Cir. 2004) (per curiam). In *Drake* the Fifth Circuit overturned an order dismissing prisoners' §1983 claims against a city for the city's failure to institute adequate training and/or supervision of its jailers. *Id.* The prisoners claimed that the city's failure resulted in a jailer sexually assaulting the prisoners while they were locked in the city jail. *Id.* "[A] municipality is subject to § 1983 liability when the

---

[28] According to Ms. Sherman, Officer Irwin's "M.O." was to coerce Ms. Sherman into a car with threats of abusing police power before using physical violence, or the threat of violence, to gain sexual gratification.
[29] (Rec. Doc. 31 at 10).

11

municipality's policies regarding employee training and/or supervision were obviously inadequate, and the resulting lack of training and/or supervision was likely to (and actually did) lead to a constitutional violation." *Id.* At the dismissal stage the Fifth Circuit found itself "unwilling to say, at this point, that it is not obvious that male jailers who receive no training and who are left virtually unsupervised might abuse female detainees." *Id.* at 900.

Although jailors wield control over a particularly vulnerable population, nothing in the *Drake* opinion suggests its reasoning is limited to a single context.[30] In any case, *Drake* seems particularly applicable to this case because Officer Irwin allegedly used threats of state action—such as having Plaintiff's probation or the custody of her children revoked—to gain sexual control over someone within his power. Accepting Plaintiffs' well-pleaded allegations as true—as this Court must on a 12(b)(6) motion—the Court is similarly unwilling to say that former Chief Smith's inaction did not cause Plaintiff's injuries.[31]

## IV. MS. SHERMAN'S § 1983 CLAIMS AGAINST THE CITY

In her amended complaint, Ms. Sherman alleges that City was deliberately indifferent "through Chief Smith . . . the highest ranking member of the SPD." The

---

[30] Indeed, district courts have tended to apply *Drake* in a variety of circumstances. *See, e.g.*, *Spence v. City of Dallas*, No. 3:04-CV-1387-B, 2006 WL 8437532, at *2 (N.D. Tex. Mar. 17, 2006) (declining to dismiss claims against city for failure to adequately train officers regarding excessive force), *Jones v. City of San Antonio*, No. SA-14-CA-328FB (HJB), 2016 WL 9453789 at * 9 (W.D. Tex. Dec. 29, 2016) (finding a reasonable jury could conclude that police department had failed to supervise or reasonably discipline officer whom the city suspended for 45 days, but did not terminate, for being severely intoxicated on duty and generally disruptive).
[31] It bears mention that Plaintiff's allegations of indifference are more egregious than those of *Drake*. The allegation is not merely that Defendants failed completely to supervise for the abuse of power or to train against its misuse, but that Chief Smith willfully turned a blind eye to the abuse.

12

Court infers this to be an allegation that Chief Smith was the City's policymaker, and that the City is therefore culpable for Chief Smith's decision not to supervise or train Officer Irwin. Thus, Plaintiff's § 1983 claim against the City survives for the same reasons the Court did not dismiss Plaintiff's claim against former Chief Smith individually. *Bryan Cty.*, 219 F.3d at 462. ("[T]he County, through its policymaker, is culpable for purposes of § 1983 for its choice not to train [the offending officer] (and not to provide proper supervision for him)."). Chief Smith may not in fact be the City's policymaker. That determination will have to be made at the summary judgment stage—if it is not resolved by stipulation between the parties. Whomever the relevant policymaker may be, Plaintiff's burden will be to demonstrate that the policymaker implemented a policy of not supervising or training.

V. **PRESCRIPTION OF PLAINTIFFS' STATE LAW CLAIMS**

Against Officer Irwin, Ms. Sherman also brings an intentional tort claim for his alleged sexual assaults, as well as a claim for intentional infliction of emotional distress ("IIED"). Mr. Sherman has brought a claim against Officer Irwin for loss of consortium. In their reply brief, Defendants presume, "based on the wording of the Plaintiff's Original Complaint, that these state claims . . . are directed only at Officer Irwin, the perpetrator of the alleged sexual assault, rather than either Slidell or former Chief Smith."[32] However, it appears to the Court that Plaintiffs assert that the City is liable under state law by virtue of a respondeat superior theory,[33] and

---

[32] (Rec. Doc. 39 at 3).
[33] The Court dismissed with prejudice any claims brought pursuant to § 1983 that were premised under a theory of vicarious liability. They are not pending before the Court.

13

Defendants did argue in their first motion to dismiss that these IIED and consortium claims are time-barred based on the general 1-year prescription period for delictual actions.[34] This Court agreed with Defendants in part and dismissed Plaintiffs' IIED and consortium claims for conduct occurring before April 26, 2016. The Court noted, though, that the "Defendants had not challenged the timeliness of Ms. Sherman's state claims for sexual assault, which is governed by a three-year prescriptive period pursuant to Louisiana Civil Code Article 3496.2."[35] Thus, the Court did not find Ms. Sherman sexual assault claims against Officer Irwin to be time-barred whatsoever; they remain pending before the Court.

However, Ms. Sherman appears to argue that this Court was incorrect to apply a one-year limitations period to *any* of Plaintiffs' state law claims; instead, the Court should have applied the three-year period described in article La. Civ. Code art. 3496.2. That article provides:

> A delictual action against a person for any act of sexual assault, as defined in R.S. 46:2184, is subject to a liberative prescription of three years. This prescription commences to run from the day the injury or damage is sustained or the day the victim is notified of the identity of the offender by law enforcement or a judicial agency, whichever is later.

Article 3496.2 is new. To this Court's knowledge, no court has decided whether this more specific prescription period should apply to IIED or consortium claims that are based on an underlying act of sexual assault. Defendants argue that this Court should again employ the general one-year prescriptive period because Plaintiffs provide no explanation for why the longer period should apply to the claims asserted against the

---
[34] La. Civ. Code art. 3492.
[35] (Rec. Doc. 27 at 17).

City. Plaintiffs need not do so. The "party pleading prescription bears the burden of proving it." *Caronna v. Curry*, 473 So. 2d 355, 356 (La. App. 5th Cir. 1985) (quoting *City of New Orleans v. Century Management, Inc.*, 442 So.2d 831 (La. App. 4th Cir. 1983)). Given the plain language of article 3496.2, the Plaintiffs' position that it provides the governing limitations period for their state law claims brought on the basis of an "act of sexual assault" is at least reasonable. Defendants may challenge that premise at summary judgment by fully briefing a contrary position.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the Motion is **GRANTED in part**. Plaintiff's § 1983 claims against former Chief Smith in his official capacity are **DISMISSED without prejudice** as duplicative. Plaintiff's § 1983 claims against former Chief Smith individually and the City for conduct arising before April 26, 2016, are **DISMISSED with prejudice** as prescribed.

**IT IS FURTHER ORDERED** that the Motion is **DENIED** as it regards Plaintiff's § 1983 claims for the alleged injuries she suffered after April 26, 2016, because the City and former Chief Smith individually failed to train or supervise Officer Irwin. The Plaintiffs' state law claims shall likewise be maintained, Defendants having failed to prove they are prescribed.

New Orleans, Louisiana, this 18th day of January, 2019.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE